IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE

AT KNOXVILLE

MARCH 1999 SESSION

FILED

June 8, 1999

Cecil Crowson, Jr.
Appellate Court
Clerk

| | | |
|---|---|---|
| **STATE OF TENNESSEE,** | * | C.C.A. No. 03C01-9804-CC-00128 |
| Appellee, | * | BLOUNT COUNTY |
| vs. | * | Hon. D. Kelly Thomas, Jr., Judge |
| **SANDRA C. HUNDLEY,** | * | (Probation Revocation) |
| Appellant. | * | |

For Appellant:

Julie A. Martin
P.O. Box #426
Knoxville, TN 37901-0426

Mack Garner
District Public Defender
419 High Street
Maryville, Tennessee 37804

For Appellee:

John Knox Walkup
Attorney General and Reporter
425 Fifth Avenue North
Nashville, TN 37243-0493

Todd R. Kelly
Assistant Attorney General
Criminal Justice Division
425 Fifth Avenue North
Nashville, TN 37243-0493

Philip Morton
Assistant District Attorney General
363 Court Street
Maryville, TN 37804

OPINION FILED: _____

AFFIRMED

NORMA MCGEE OGLE, JUDGE

## OPINION

The appellant, Sandra C. Hundley, appeals the order of the Circuit Court of Blount County revoking her probation and requiring that she serve the balance of her sentence in the Tennessee Department of Correction Special Needs Unit. Specifically, the appellant contends that, following the revocation of her probation, the trial court should have sentenced her pursuant to the Tennessee Community Corrections Act of 1985.

Following a review of the record, we affirm the judgment of the trial court.

## I. Factual Background

On June 23, 1994, pursuant to her pleas of guilt, the appellant was convicted of uttering a forged check over one thousand dollars ($1,000.00) and uttering a forged check over five hundred dollars ($500.00). The trial court imposed concurrent sentences of two years and one year incarceration in the Blount County Jail. The trial court suspended all but fifteen days of the appellant's sentence and placed her on supervised probation for a period of three (3) years, eleven (11) months, and fifteen (15) days. Special conditions of the appellant's probation included frequent drug screens and an alcohol and drug assessment.

On December 31, 1996, the appellant's probation officer, Sue Littleton, filed an affidavit with the Blount County Circuit Court. In the affidavit, Ms. Littleton alleged that the appellant had been convicted on July 11, 1996, of driving on a suspended license and had been arrested on November 13, 1996, for driving on a revoked license. Ms. Littleton also alleged that the appellant had failed to complete alcohol and drug counseling and Self-esteem and GED classes, provided by the

2

Community corrections program. The appellant had failed to pay probation supervision fees from June, 1996 through November, 1996 and had failed to verify payment of court costs since April, 1996. On April 7, 1997, following the appellant's stipulation that she had violated the terms of her probation, the trial court ordered that the appellant serve ten (10) consecutive weekends in the Blount County Jail beginning on April 11, 1997.

On March 6, 1998, Ms. Littleton again filed an affidavit with the trial court stating that the appellant had failed to serve ten consecutive weekends in jail and had failed to pay court costs. The court issued a warrant for the appellant's arrest. The trial court conducted a probation revocation hearing on March 30, 1998. Ms. Littleton, the appellant's probation officer, testified at the hearing. She stated that she had supervised the appellant's probation since September, 1994. She confirmed that, although the appellant had been ordered to serve ten consecutive weekends in the Blount County Jail beginning in April, 1997, the appellant had served only four weekends at the time the probation revocation warrant was issued almost one year later.

The probation officer recounted that the appellant served two weekends in the Blount County Jail in June, 1997. The appellant then attempted to commit suicide in July, 1997, overdosing with Amitriptyline, an anti-depressant medication that had been prescribed to the appellant by a doctor. Apparently as a result of her suicide attempt, the appellant also developed a blood clot in her leg which required treatment. Ms. Littleton spoke with the Assistant District Attorney General and informed him that, due to the appellant's health problems, she did not believe the appellant should return to jail until January, 1998. At that time, the appellant attempted to report to the jail on several occasions, but was turned away

due to overcrowding in the jail and, on one occasion, an outbreak of the flu. The appellant was able to serve two weekends in jail in February, 1998. However, she did not report to the jail on the last weekend in February. In March, the appellant's mother informed Ms. Littleton that the appellant had not reported to the jail, because she had again overdosed with her medication and her mother had been unable to awaken the appellant. The probation officer became concerned that the appellant would again attempt to commit suicide and requested a probation revocation warrant.

Ms. Littleton additionally testified that the appellant owed almost two thousand dollars ($2,000.00) in restitution. However, at the time of the probation revocation hearing, the appellant had only paid approximately one hundred and fifty dollars ($150.00). The probation officer stated that the appellant is the mother of two children. Moreover, the appellant's health problems and her lack of a driver's license had prevented the appellant from maintaining employment and had contributed to the appellant's poor attendance at classes conducted by the Community Corrections program.

Ms. Littleton stated that, with the exception of her failure to serve the required weekends in the Blount County Jail, the appellant had made efforts to comply with the conditions of her probation, but had been thwarted by her financial circumstances. She testified that the appellant was attempting to obtain Supplemental Security Income and, if successful, would be able to comply with the conditions of probation. She further opined that the appellant needs counseling for mental health problems. Finally, the probation officer recommended that the appellant be placed in jail only until she had served the balance of incarceration ordered by the court at the conclusion of the prior probation revocation proceeding.

4

The appellant also testified at the probation revocation hearing. She stated that she was unable to maintain steady employment due to her lack of a driver's license. Yet, she could not afford the fees required to reinstate her driver's license. She testified that she was currently applying for Supplemental Security Income for both herself and her son.

Additionally, the appellant stated that, in part, she failed to serve the required weekends in jail because she had to care for her son. With respect to her suicide attempt, she explained that she overdosed on prescription medication because she "couldn't handle anymore." However, she could not recall why, prior to attempting suicide, she failed to report to the jail on weekends. Furthermore, the appellant conceded that she recovered from her suicide attempt in October, 1997 and could not recall why she did not report to the jail at that time. She also could not recall overdosing with her medication in February, 1998.

The appellant testified that she was no longer on psychotropic medication at the time of the probation revocation hearing, and was seeing a psychiatrist. She was also taking medication for the blood clot in her leg and receiving blood tests once every two weeks. The appellant stated that she did not take illegal drugs and, despite regular testing, had never failed a drug test while on probation. The appellant asserted that she had been reporting to her probation officer regularly. She also stated that if her applications for Supplemental Security Income were approved, she could pay her court costs. Finally, she claimed that she needed to return home in order to avoid eviction by the Knoxville Housing Authority. She stated that, since her arrest for the probation violation, she had served twenty-five days in jail.

At the conclusion of the hearing, the trial court ruled as follows:

From the proof presented, Ms. Hundley has violated her probation. This is the second time. She has had the benefit of about everything that there is to offer. She was sentenced to serve fifteen days in jail originally and she appealed that. So, she got the court of Appeals to look at that. That delayed her jail time for her for over a year -- or a year.

So, she served her fifteen days and then got arrested twice for driving on a suspended license. And didn't compete her drug and alcohol group. So, for that, instead of being revoked, she just got ten consecutive weekends in jail beginning April 11th, 1997, at 4:30 p.m., to accommodate her work schedule. She wasn't capable of doing that.

And in the meantime, she has tried to harm herself once, if not twice. And as recently as earlier this month, was at home and, in such a state from taking some kind of medication or drugs, couldn't be wakened by her mother and doesn't even remember anything about it or know anything about it. And it's what brought this warrant on and she got arrested because of it and still doesn't know anything about it.

By saying these things, I'm not suggesting that Ms. Hundley isn't doing the best that she can do, but, you know, what's the alternative? You do the best you can on probation and you can't do it, then does that mean that you just forget it, if nothing -- you know, just nothing happens?

There is nothing available to help her that probation hasn't already tried, and she can't do it. And there's nothing in the record to indicate that there's anything out there that hasn't been tried. And I guess some people truly aren't capable of being out and being on probation.

She does not need to be in our jail for six months and she doesn't need to be on probation. It's obvious it's a danger to her from the proof that I've heard. Forget her not being able to go to jail or do what she's supposed to do, it's a danger for her personal safety.

So, I'm going to revoke her probation, order her to serve the balance of her sentence in the Department of Corrections, make a recommendation that she be evaluated to determine if she should be in the Special Needs Unit, but that's up to the Department of Corrections.

While she's being held in the jail waiting to be

6

transported, I will ask someone from Community Corrections to interview her and see if there is something that might work -- you know, I mean, that would likely work to make her treatable in this community as opposed to having to be sent to the penitentiary, in case there's something out there that we didn't know about. But more of the same is pointless.

## II. Analysis

Initially, the appellant does not challenge the revocation of her probation. A trial court may revoke a defendant's probation when it finds by a preponderance of the evidence that the probationer has violated the conditions of probation. Tenn. Code. Ann. § 40-35-310, -311(d) (1997). The appellant concedes that she violated the conditions of her probation. Nevertheless, she asserts that the trial court abused its discretion by failing to consider general sentencing principles and by failing to impose a community corrections sentence.

In the context of probation revocation proceedings, an abuse of discretion occurs only when the record contains no substantial evidence to support the conclusion of the trial court that a violation of a condition of probation has occurred. State v. Duke, 902 S.W.2d 424, 427 (Tenn. Crim. App. 1995). If the defendant has violated a condition of probation, Tenn. Code. Ann. § 40-35-311(d) (1997) grants the trial court the authority "to commence execution of the judgment as originally entered." Contrary to the appellant's assertions, the trial court is not required to reconsider sentencing principles at this stage in the proceedings. State v. Seymour, No. 03C01-9709-CR-00357, 1998 WL 842197, at *2 (Tenn. Crim. App. at Knoxville, December 8, 1998); State v. Burnette, No. 03C01-9608-CR-00314, 1997 WL 414979, at *2 (Tenn. Crim. App. at Knoxville, July 25, 1997). The petitioner's argument is without merit.

7

We do note that the trial court in this case modified the appellant's original sentence, ordering the appellant to serve her effective sentence of two years in the Department of Correction rather than in the local jail. However, Tenn. Code. Ann. § 40-35-212(c) (1997) provides that, unless a defendant receives a sentence in the Department, the trial court retains full jurisdiction over the manner of the defendant's sentence service. Moreover, Tenn. Code. Ann. § 40-35-314(e) (1997) provides that a trial court has full authority to transfer a defendant to the Department of Corrections if a defendant serving a felony sentence in a local jail develops medical problems that the local jail is not equipped to treat. Clearly, in this case, the trial court transferred the appellant to the Department of Correction because of his concern that she receive treatment for her mental health problems.

For the foregoing reasons, we affirm the judgment of the trial court.

_____
Norma McGee Ogle, Judge

Concur:

_____
Gary R. Wade, Presiding Judge

8

_____
Cornelia A. Clark, Special Judge